﻿Citation Nr: AXXXXXXXX
Decision Date: 01/22/19 Archive Date: 01/22/19

DOCKET NO. 181004-490
DATE: January 22, 2019

ORDER

A September 2008 rating decision did not contain clear and unmistakable error (CUE) in its denial of the claim for service connection for bilateral ankle disorder; the appeal is denied.

The September 2008 rating decision did not contain CUE in its denial of the claim for service connection for residual of right eye injury and secondary vision loss; the appeal is denied.

A September 2008 rating decision did not contain CUE in its denial of the claim for service connection for open angle glaucoma (claimed as glaucoma); the appeal is denied.

The September 2008 rating decision did not contain CUE in its assignment of a noncompensable rating for bilateral plantar fasciitis; the appeal is denied.

Entitlement to an effective date prior to February 9, 2011 for an award of service connection for residual scarring on neck disability is denied. 

Entitlement to an effective date prior to February 9, 2011 for an award of service connection for right ankle disability is denied. 

Entitlement to an effective date prior to February 9, 2011 for an award of service connection for left ankle disability is denied. 

Entitlement to a 30 percent rating, and not higher, prior to March 29, 2017 for bilateral plantar fasciitis and pes planus disability is granted. 

Entitlement to a rating in excess of 30 percent since March 29, 2017 for bilateral plantar fasciitis and pes planus disability is denied.

Entitlement to an initial rating in excess of 10 percent prior to April 19, 2017, for left ankle disability is denied.

Entitlement to a rating of 20 percent, and not higher, since April 19, 2017 for left ankle disability is granted. 

Entitlement to an initial rating in excess of 10 percent prior to April 19, 2017, for right ankle disability is denied.

Entitlement to a rating of 20 percent, and not higher, since April 19, 2017 for right ankle disability is granted.

Entitlement to an initial rating in excess of 10 percent for tinea barbae disability is denied.

Entitlement to service connection for a left wrist disorder is denied.

Entitlement to service connection for right eye orbital contusion with diplopia and mild traumatic iritis condition is denied.

 Entitlement to service connection for open angle glaucoma is denied.

REMANDED

Entitlement to an initial compensable rating for disability due to residual scarring on neck is remanded.

Entitlement to service connection for residual eye injury and secondary vision loss is remanded. 

Entitlement to service connection for headaches, to include as secondary to residuals of eye injury and vision loss, is remanded.

FINDINGS OF FACT

1. In a September 2008 rating decision, the RO denied service connection for bilateral ankle disorder and residuals of eye injury with associated vision loss, because evidence failed to demonstrate the Veteran had current disabilities as a result of his period of service.

2. In the September 2008 rating decision, the RO denied service connection for glaucoma, because the evidence failed to demonstrate it was a result of the Veteran’s period of service.

3. The record does not establish that the correct pertinent facts, as they were known in September 2008, were not before the RO, or that the RO incorrectly applied statutory or regulatory provisions extant at that time, such that the outcome of the claims would have been manifestly different but for the error.

4. In the September 2008 rating decision, the RO awarded service connection for bilateral plantar fasciitis disability and assigned a noncompensable rating. 

5. In assigning a noncompensable rating for the award of service connection for bilateral plantar fasciitis, the September 2008 rating decision was adequately supported by and consistent with the law and evidence then of record, and it did not contain undebatable error that would have manifestly changed the outcome of those determinations.

6. On February 9, 2011, VA received the Veteran’s petition to reopen a previously denied claim for bilateral ankle disorder. 

7. No formal or informal claim to reopen the previously denied claim for service connection for bilateral ankle disorder was received prior to February 9, 2011. 

8. On February 9, 2011, VA received a claim for increased rating for skin disability which led to the award of a separate rating for residual scarring on neck disability. 

9. Throughout the pendency of the appeal, the Veteran’s bilateral plantar fasciitis and pes planus disability was manifested by severe symptomatology that resulted in excessive pronation and indication of swelling on use. 

10. At no point during the pendency of the appeal has the Veteran’s bilateral plantar fasciitis and pes planus disability more nearly approximate pronounced symptoms, including marked pronation, marked inward displacement and severe spasm of the tendo achillis on manipulation.

11. For the period prior to April 19, 2017, the Veteran’s left ankle disability more closely approximated moderate, rather than marked limitation of motion. 

12. As of April 19, 2017, the date of VA examination, the Veteran’s left ankle disability is productive of marked limited motion of the left ankle. 

13. At no point during the pendency of the appeal has the Veteran’s left ankle disability been productive of ankylosis, malunion of the os calcis or astralagus, a history of astragalectomy, or the functional equivalent thereof at any point during the pendency of the appeal. 

14. For the period prior to April 19, 2017, the Veteran’s right ankle disability more closely approximated moderate, rather than marked limitation of motion. 

15. As of April 19, 2017, the date of VA examination, the Veteran’s right ankle disability is productive of marked limited motion of the right ankle. 

16. At no point during the pendency of the appeal has the Veteran’s right ankle disability been productive of ankylosis, malunion of the os calcis or astralagus, a history of astragalectomy, or the functional equivalent thereof at any point during the pendency of the appeal.

17. The Veteran’s service-connected tinea barbae affects less than 20 percent of the entire body and less than 20 percent of exposed areas, and does not require intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of less than 6 weeks during the past 12-month period.

18. The competent medical evidence does not demonstrate that the Veteran has a currently diagnosed left wrist disorder. 

19. The competent medical evidence does not demonstrate that the Veteran has a current diagnosis of right eye orbital contusion, diplopia, or mild traumatic iritis.

20. The Veteran’s open angle glaucoma was not shown in service or for many years thereafter, and is not otherwise related to active duty service.

CONCLUSIONS OF LAW

1. The September 2008 rating decision denying service connection for bilateral ankle disorder was not clearly and unmistakably erroneous. 38 U.S.C. § 5109A (2012); 38 C.F.R. §§ 3.104, 3.105(a) (2018).

2. The September 2008 rating decision denying service connection for residual right injury with secondary vision loss was not clearly and unmistakably erroneous. 38 U.S.C. § 5109A (2012); 38 C.F.R. §§ 3.104, 3.105(a) (2018).

3. The September 2008 rating decision denying service connection for glaucoma was not clearly and unmistakably erroneous. 38 U.S.C. § 5109A (2012); 38 C.F.R. §§ 3.104, 3.105(a) (2018).

4. The September 2008 rating decision that assigned an initial noncompensable rating for bilateral plantar fasciitis disability was not clearly and unmistakably erroneous. 38 U.S.C. § 5109A (2012); 38 C.F.R. §§ 3.104, 3.105(a) (2018).

5. The criteria for entitlement to an effective date prior to February 9, 2011 for an award of service connection for right ankle disability have not been met. 38 U.S.C. §§ 5110 (2012); 38 C.F.R. §§ 3.102, 3.400 (2018).

6. The criteria for entitlement to an effective date prior to February 9, 2011 for an award of service connection for left ankle disability have not been met. 38 U.S.C. §§ 5110 (2012); 38 C.F.R. §§ 3.102, 3.400 (2018).

7. The criteria for entitlement to an effective date prior to February 9, 2011 for an award of service connection for residual scarring on neck disability have not been met. 38 U.S.C. §§ 5110 (2012); 38 C.F.R. §§ 3.102, 3.400 (2018).

8. The criteria for entitlement to a rating of 30 percent, and not higher, for the period prior to March 29, 2017 for bilateral plantar fasciitis and pes planus has been met. 38 U.S.C. §§ 1155 (2012); 38 C.F.R. §§ 3.159, 4.1-4.14, 4.40-4.45, 4.59, 4.71a, Diagnostic Code 5276 (2018).

9. The criteria for entitlement to a rating in excess of 30 percent since March 29, 2017 for bilateral plantar fasciitis and pes planus has not been met. 38 U.S.C. §§ 1155 (2012); 38 C.F.R. §§ 3.159, 4.1-4.14, 4.40-4.45, 4.59, 4.71a, Diagnostic Code 5276 (2018).

10. The criteria for entitlement to an initial rating in excess of 10 percent for left ankle disability prior to April 19, 2017 have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 3.159, 4.1-4.14, 4.40-4.45, 4.59, 4.71a, Diagnostic Code 5271 (2018).

11. The criteria for entitlement to a rating of 20 percent, and not higher, for left ankle disability since April 19, 2017 have been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 3.159, 4.1-4.14, 4.40-4.45, 4.59, 4.71a, Diagnostic Code 5271 (2018).

12. The criteria for entitlement to an initial rating in excess of 10 percent for left ankle disability prior to April 19, 2017 have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 3.159, 4.1-4.14, 4.40-4.45, 4.59, 4.71a, Diagnostic Code 5271 (2018).

13. The criteria for entitlement to a rating of 20 percent, and not higher, for left ankle disability since April 19, 2017 have been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 3.159, 4.1-4.14, 4.40-4.45, 4.59, 4.71a, Diagnostic Code 5271 (2018).

14. The criteria for entitlement to an initial rating in excess of 10 percent for tinea barbae disability have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 3.159, 4.1-4.14, 4.118, Diagnostic Code 7806 (2018).

15. The criteria for entitlement service connection for a left wrist disorder is denied. 38 U.S.C. §§1110, 1131, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303 (2018). 

16. The criteria for entitlement to service connection for right eye orbital contusion with diplopia, mild traumatic iritis condition, and double vision is denied. 38 U.S.C. §§1110, 1131, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303 (2018).

17. The criteria for entitlement to service connection for glaucoma have not been met. 38 U.S.C. §§1110, 1131, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

The Veteran served on active duty in the United States Army from October 1974 to July 1980. The Veteran selected the Higher-Level Review lane when he submitted a RAMP election form on May 9, 2018. Accordingly, a July 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

In the July 2018 RAMP decision, the AOJ found that new and relevant evidence was submitted to warrant re-adjudicating the claims for service connection for residuals of eye injury with secondary vision loss and glaucoma. The Board is bound by this favorable finding. AMA, Pub. L. No. 115-55 § 5104A, 131 Stat. 1105, 1106-07.

Clear and Unmistakable Error (CUE)

A rating decision becomes final and binding if the Veteran does not timely perfect an appeal of the decision. 38 U.S.C. § 7105 (2012); 38 C.F.R. §§ 3.104 (a), 3.160(d), 20.200, 20.302, 20.1103 (2018). Previous determinations that are final and binding, including decisions of service connection, will be accepted as correct in the absence of collateral attack by showing the decision involved CUE. 38 C.F.R. § 3.105 (a) (2018).

CUE is a special type of error; it is an error that the claimant alleges was made in a prior rating decision that the claimant did not appeal within the one-year time limit for filing an appeal to the Board. 38 U.S.C. §§ 5109A, 7105(b)(1), (c) (2012); 38 C.F.R. § 3.105 (a) (2018). It is not just any error but rather it is the sort of error that, had it not been made, would have manifestly changed the outcome of the rating decision so that the benefit sought would have been granted. Russell v. Principi, 3 Vet. App. 310, 313 (1992). 

It is not simply a disagreement with how the facts were weighed or evaluated. Rather, either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied. Russell, 3 Vet. App. at 313.

A determination of CUE is a three-pronged test: (1) either the correct facts, as they were known at the time, were not before the adjudicator (i.e., there must be more than a simple disagreement as to how the facts were weighed or evaluated) or the statutory or regulatory provisions extant at the time were incorrectly applied; (2) the error must be undebatable and of the sort which, had it not been made, would have manifestly changed the outcome at the time it was made; and (3) a determination that there was CUE must be based on the record and law that existed at the time of the prior adjudication in question. Russell, at 310. 

A claim for benefits based on CUE in a prior final rating decision entails special pleading-and-proof requirements to overcome the finality (res judicata) of the decision by collateral attack because the decision was not appealed during the appeal period. Duran v. Brown, 7 Vet. App. 216, 223 (1994). For a claimant to successfully establish a valid claim of CUE in a final RO rating decision, the claimant must articulate with some degree of specificity what the alleged error is, and, unless the alleged error is the kind of error that, if true, would be CUE on its face, the claimant must provide persuasive reasons explaining why the result of the final rating decision would have been manifestly different but for the alleged error. Luallen v. Brown, 8 Vet. App. 92, 94 (1995).

1. Whether there was clear and unmistakable error in a September 2008 rating decision that denied service connection for bilateral ankle disorder 

2. Whether there was clear and unmistakable error in a September 2008 rating decision that denied service connection for residuals of eye injury and secondary vision loss

3. Whether there was clear and unmistakable error in a September 2008 rating decision that denied service connection for open angle glaucoma (claimed as glaucoma)

The Veteran asserts there was CUE in the September 2008 rating decision that denied his claims for service connection for bilateral ankle disorder, residuals of right injury with vision loss, and glaucoma. He did not appeal the September 2008 rating decision and does not assert that he did. It is considered final. 38 U.S.C. § 7105; 38 C.F.R. §§ 20.302, 20.1103. 

Historically, the Veteran filed an original application for entitlement to service connection for bilateral ankle disorder, residual of right injury with secondary vision loss, and glaucoma in October 2007. Under the law extant at the time of the September 2008 rating decision, establishing service connection required (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) a causal connection between the claimed in-service disease or injury and the current disability. 

The Veteran argues that the September 2008 rating decision that denied his claims for service connection for bilateral ankle disorder, residual of right injury, and glaucoma was clearly and unmistakably erroneous because the RO failed to provide him with a VA examination before denying his claims. 

The record at the time of the September 2008 rating decision contained the Veteran’s service treatment records, private treatment records, and VA treatment records. Although the Veteran’s service treatment records showed complaints of bilateral ankle problems and treatment for right eye injury, they did not show the Veteran was diagnosed with chronic ankle or eye disorder. In addition, the post-service medical treatment records failed to show diagnosis or treatment for ankle problems or residual of right eye injury. While post-service medical treatment records showed diagnosis of glaucoma, there was no indication in those records that his currently diagnosed glaucoma was result of his period of service. Also, the post-service diagnosis of refractive error is not a disability for VA compensation purposes. 38 C.F.R. §§ 3.303 (c), 4.9; VAOPGCPREC 82-90.

In March 2008, the RO sent the Veteran a letter requesting additional information in conjunction with his claims for entitlement to service connection bilateral ankle disorder, right eye injury with vision loss, and glaucoma. In particular, the Veteran was asked to provide additional information that showed his claimed conditions existed from military service to present, but the Veteran did not respond. On September 24, 2008, the RO denied the claims for service connection based on the record and found that the evidence failed to demonstrate current diagnoses of bilateral ankle disorder and residuals of right injury with vision loss and failed to demonstrate his currently diagnosed glaucoma was incurred or related to his period of service. 

The Veteran contends that the RO failed to assist him by not providing him with a VA medical examination to determine the nature and etiology of his claimed conditions prior to adjudicating the September 2008 rating decision. The Veteran asserts that the September 2008 rating decision was erroneous because the failed in the duty to assist by providing him with a VA examination in accordance with 38 C.F.R. § 3.159. 

It is well settled law that a failure in the duty to assist does not establish CUE. See Cook v. Principi, 318 F.3d 1334 (Fed. Cir. 2002) (a purported failure in the duty to assist cannot give rise to clear and unmistakable error, nor does it result in “grave procedural error” so as to vitiate the finality of a prior, final decision.) An alleged failure in the duty to assist by the RO may never form the basis of a valid claim of CUE, because it essentially is based upon evidence that was not of record at the time of the earlier rating decision. See Elkins v. Brown, 8 Vet. App. 391, 396 (1995).

Thus, the Veteran’s contention that the RO failed to assist him by affording a VA examination is not a valid basis of CUE because it relates to the development of the claims, rather than to specific error in adjudication of the claims based on the record then developed. Hence, CUE is not properly raised by this contention, and no CUE argument may serve to support the Veteran’s claims based on the RO’s failure to assist.

Based on the evidence of record in September 2008, the RO concluded that the competent evidence of record did not show that current diagnosis of bilateral ankle disorder or residuals of right eye injury with vision loss, or show that his current diagnosed glaucoma was incurred in or related to his period of service. The Board finds the RO correctly applied the relevant laws and regulations in existence at the time of the September 2008 rating decision. In addition, the rating decision’s list of the relevant evidence considered therein included the service treatment records, and post-service VA and private treatment records. Thus, the correct facts were before the adjudicator.

The RO’s conclusions do not amount to legal error. The Veteran was informed of the decision and provided his appeal rights. To the extent that he may presently disagree with how the facts were weighed or evaluated by the RO in reaching its decision in September 2008, such disagreement alone is insufficient to constitute CUE. Russell, 3 Vet. App. at 310; Fugo, 6 Vet. App. at 40. 

In conclusion, the Board finds that the September 24, 2008 rating decision was reasonably supported by the evidence of record, correctly applied and considered prevailing legal authority, and was not undebatably erroneous. Furthermore, the RO, in September 2008, had before it the correct facts as they were known at the time, and any alleged breach of the duty to assist cannot constitute CUE. The Board finds that the RO decision was a plausible application of the extant legal provisions to the correct facts. The rating decision does not demonstrate error, such that reasonable minds cannot differ that a change in outcome is required. 

Accordingly, the Veteran’s request for revision of the September 24, 2008 rating decision that denied service connection for bilateral ankle disorder, residual of right eye injury, and glaucoma based on CUE must be denied.

4. Whether there was clear and unmistakable error in a September 2008 rating decision that assigned a noncompensable rating for bilateral plantar fasciitis

In October 2007, VA received the Veteran’s claim for service connection for bilateral foot disorder. In a September 24, 2008 rating decision, the RO granted service connection for bilateral plantar fasciitis and assigned a noncompensable rating, effective from October 2, 2007. He did not appeal that decision and does not assert that he did. It is considered final. 38 U.S.C. § 7105; 38 C.F.R. §§ 20.302, 20.1103. 

The Veteran argues that the September 2008 rating decision that assigned an initial noncompensable disability rating for service connection for bilateral plantar fasciitis was CUE, and that a higher disability rating should have been established at that time. He specifically argues that he was not afforded reasonable doubt in not being assigned an “optimum” disability rating, and that the case should have warranted the necessity for additional development.

Specifically, in the September 2008 rating decision, the RO determined that the evidence of record showed that the Veteran had bilateral plantar fasciitis that was incurred during his period of service. In assigning an initial disability rating, the RO considered the Veteran’s service treatment records which showed complaints of bilateral foot pain and treatment of shoe inserts for plantar fasciitis. The RO also considered the Veteran’s current complaints of sore and swollen arches. 

The Veteran’s bilateral plantar fasciitis was assigned an initial noncompensable rating by analogy under Diagnostic Code 5099-5024 (2008). Diagnostic Code 5099 indicates the disability is not listed in the Schedule for Rating Disabilities and it has been rated by analogy under a closely related disease or injury. 38 C.F.R. §§ 4.20, 4.27. The Veteran’s bilateral plantar fasciitis was rated by analogy under Diagnostic Code 5024 for tenosynovitis. The regulations direct that tenosynovitis will be rated on limitation of motion of the affected parts. 38 C.F.R. § 4.71a, Diagnostic Code 5024. 

Foot disabilities are governed by the provisions of 38 C.F.R. § 4.71a, Diagnostic Codes 5276 through 5284. None of these Diagnostic Codes specifically lists plantar fasciitis. Diagnostic Code 5276 provides that a noncompensable rating is assignable when symptoms are mild and relieved by built-up shoe or arch support; and a 10 percent rating is assignable for moderate impairment with weight-bearing line over or medial to great toe, inward bowing of the tendo Achillis, pain on manipulation and use of the feet. Higher ratings are warranted for more severe symptomatology. 38 C.F.R. § 4.71a, Diagnostic Code 5276.

Diagnostic Code 5284 provides that other foot injuries will be rated as 10 percent disabling for moderate impairment, as 20 percent disabling for moderately-severe impairment, and as 30 percent disabling for severe impairment. 38 C.F.R. § 4.71a (2008). 

The RO in September 2008 weighed the evidence of record, based upon review of the service treatment records which showed diagnosis of plantar fasciitis with treatment of shoe inserts and his post-service complaints of sore and swollen arches, and assigned an initial noncompensable disability rating. The RO determined that a higher rating was not warranted without evidence of painful or limited motion in the feet. 

The Board notes that the post-service treatment records at the time of the September 2008 rating decision do not show treatment for plantar fasciitis. Rather, the VA treatment records show the Veteran had normal feet examination without evidence of callus, ulcer, edema, or neurologic impairment. See December 2002, July 2005, and September 2007 VA treatment records. The only evidence of bilateral foot problems consisted of the Veteran’s lay statements of sore and swollen arches. 

Essentially, the Veteran’s assertion about the incorrect assignment of the initial noncompensable disability rating amounts to a difference of opinion in the outcome of the adjudication or a disagreement as to how the facts were weighed and evaluated. A difference of opinion in the outcome of the adjudication or a disagreement as to how facts were weighed and evaluated does not provide a basis upon which to find that VA committed administrative error during the adjudication process. Luallen v. Brown, 8 Vet. App. 92, 96 (1995). As this is not a basis upon which to find CUE, the Board finds that the RO did not commit administrative error during the adjudication process of this claim in September 2008 by rating the Veteran’s disability under the applicable Diagnostic Codes.

The Board has considered the Veteran’s assertion that the RO erred in the September 2008 rating decision by not scheduling for a VA examination in conjunction for his claim and that a higher rating would have been assigned absent the RO’s failure to afford the Veteran a VA examination prior to adjudication of his claim. The Board reiterates that allegations that VA’s failure in its duty to assist are, as a matter of law, insufficient to form a basis for a claim of CUE. Fugo, 6 Vet. App. at 44; see Caffrey v. Brown, 6 Vet. App. at 383-84. 

As discussed above, to establish CUE, a claimant must show either that the correct facts, actually or constructively of record at the time of the prior adjudication, were not before the adjudicator, or that the statutory or regulatory provisions extant at the time were incorrectly applied. Damrel, 6 Vet. App. at 245. The Veteran has not made such assertions of CUE in assignment of the noncompensable rating for bilateral plantar fasciitis disability the RO in the September 2008 rating decision. 

For the reasons set forth above, the Board finds that the September 2008 rating decision was not undebatably erroneous. The record does not demonstrate that the correct facts, as they were known in September 2008, were not before the RO, or that the RO incorrectly applied statutory or regulatory provisions extant at that time, such that the outcome of the claim would have been manifestly different but for the error.

Earlier Effective Dates

Except as otherwise provided, the effective date of an award of compensation based on an original claim, a claim reopened after final disallowance, or a claim for increase shall be fixed in accordance with the facts found, but shall be no earlier than the date of receipt of the application therefor. 38 U.S.C. § 5110 (a) (2012). The statutory provision is implemented by regulation, which provides that the effective date for an evaluation and award of compensation based on an original claim, a claim reopened after final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 C.F.R. § 3.400 (2018).

The term “claim” or “application” means a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. § 3.1 (p) (2018).

A formal claim is one that has been filed in the form prescribed by VA. 38 C.F.R. § 3.151 (a) (2018). An informal claim may be any communication or action indicating an intent to apply for one or more benefits under VA law. Thomas v. Principi, 16 Vet. App. 197 (2002). See also 38 C.F.R. §§ 3.1 (p), 3.155(a) (2015). An informal claim must be written and must identify the benefit being sought. See Rodriguez v. West, 189 F. 3d. 1351 (Fed. Cir. 1999); Brannon v. West, 12 Vet. App. 32, 34-35 (1998). 

5. Entitlement to an effective date prior to February 9, 2011 for an award of service connection for right ankle disability is denied. 

6. Entitlement to an effective date prior to February 9, 2011 for an award of service connection for left ankle disability is denied. 

As discussed above, the Veteran’s original claim for service connection for bilateral ankle disorder was denied in a September 2008 rating decision that is final. 38 U.S.C. § 7105; 38 C.F.R. §§ 20.302, 20.1103. 

Once a rating decision is final, only a request for a revision premised on clear and unmistakable error could result in the assignment of an earlier effective date. See Rudd v. Nicholson, 20 Vet. App. 296 (2006). As discussed above, the Veteran’s request for revision of the September 24, 2008 rating decision that denied service connection for bilateral ankle disorder based on CUE is not supported by the record, and that rating decision remains final.

The record shows that on February 9, 2011 VA received the Veteran’s request to reopen his previously denied claim for service connection for bilateral ankle disorder, and his claim was granted in a January 2013 rating decision which assigned an effective date of February 9, 2011 for the left and right ankle disabilities. 

In this case, there is no legal authority for the Board to assign an earlier effective date, as the RO has already assigned the earliest possible effective date for the award of service connection. As the September 2008 rating decision is final and is no longer the appropriate point from which to determine the effective date of an award, the earliest possible effective date of service connection for a reopened claim was the date the reopened claim was received. Sears v. Principi, 349 F.3d 1326 (Fed. Cir. 2003). 

A review of the claims folder does not show that a communication was received after the September 2008 rating decision became final and prior to February 9, 2011, that established an informal or formal application to reopen the previously denied claim of service connection for bilateral ankle disorder. 

The statute provides that the effective date of an award of compensation based on a claim reopened after final disallowance shall be fixed in accordance with the facts found, but shall be no earlier than the date of receipt of the application therefor. 38 U.S.C. § 5110 (a). Since the application to reopen the claim for service connection for bilateral ankle disorder was not received until February 9, 2011, and the effective date can be no earlier than the claim to reopen. See Id. 

Accordingly, an earlier effective date for the grant of service connection for right and left ankle disabilities is denied. Consequently, the benefit of the doubt rule does not apply, and the claim must be denied. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

7. Entitlement to an effective date prior to February 9, 2011 for award of service connection for residual scarring on neck disability is denied. 

The Veteran seeks an effective date prior to February 9, 2011 for the award of separate rating for disability due to residual scarring on neck. 

On February 9, 2011, VA received the Veteran’s claim for service connection for skin disability, and his claim was continuously developed. He was originally awarded service connection for tinea barbae disability in a January 2013 rating decision, and he appealed that initial rating which is discussed below. While on appeal, in an August 2017 rating decision, the RO awarded a separate noncompensable rating for residual scarring on the neck associated with the Veteran’s tinea barbae disability and assigned an effective date of February 9, 2011, the date of claim for service connection for skin disability. 

Again, the effective date of an award of disability compensation in conjunction with a grant of entitlement to service connection shall be the day following separation from active service or the date entitlement arose if the claim is received within one year of separation from service; otherwise, the effective date shall be the date of receipt of the claim, or the date entitlement arose, whichever is later. 38 U.S.C. § 5110; 38 C.F.R. § 3.400 (b)(2)(i).

The Veteran’s claim for service connection for skin disability was received on February 9, 2011, and the Veteran’s separate award for residual scarring rating was later assigned as a part of the underlying tinea barbae disability on claim. 

A review of the claims folder shows that the Veteran’s residual scarring was first noted in the report of an April 2017 VA skin examination which noted that the Veteran’s tinea barbae disability was manifested by a few scaly spots with elevated borders on a hyperpigmented background with diffused scarring. He was subsequently afforded a July 2017 VA scar examination which documented painful scars on neck that were tiny and too many to count. Based on these findings, the RO awarded the separate noncompensable rating for residual scarring on the neck associated with tinea barbae disability, effective from February 9, 2011, the date of claim of service connection for skin disability. See July 2017 rating decision. 

An effective date prior to February 9, 2011 is not warranted. 38 U.S.C. § 5110 (a). The evidence of record does not contain any statement or other indication that the Veteran demonstrated an intent to apply for VA benefits for skin disability prior to February 9, 2011.

Although the Veteran has argued an earlier effective date is warranted for the award of separate rating for residual scarring, it has already been assigned the date of original claim for skin disability, which is the earliest effective date allowed under VA regulations. There is no document constituting a formal or informal claim for service connection for such was filed prior to February 9, 2011. 

In light of the foregoing, the Board concludes that an earlier effective date is not warranted in this case under VA regulations governing effective dates for the award of service connection. As such, the Board finds that the preponderance of the evidence is against the Veteran’s claim for an earlier effective date for service connection for residual scarring on the neck. Consequently, the benefit of the doubt rule does not apply, and the claim must be denied. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

Increased Ratings

Disability ratings are assigned in accordance with the VA’s Schedule for Rating Disabilities and are intended to represent the average impairment of earning capacity resulting from disability. See 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 3.321 (a), 4.1 (2018). Separate diagnostic codes identify the various disabilities. See 38 C.F.R. Part 4 (2018).

“Staged” ratings are appropriate for any rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App 119 (1999). 

In addition, when assessing the severity of musculoskeletal disabilities that are at least partly rated on the basis of limitation of motion, VA must also consider the extent that the Veteran may have additional functional impairment above and beyond the limitation of motion objectively demonstrated, such as during times when his symptoms are most prevalent (“flare-ups”) due to the extent of his pain (and painful motion), weakness, premature or excess fatigability, and incoordination-assuming these factors are not already contemplated by the governing rating criteria. DeLuca v. Brown, 8 Vet. App. 202, 204-07 (1995); see also 38 C.F.R. §§ 4.40, 4.45, 4.59.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7 (2018).

The evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided; however, separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of the symptomatology of the other condition. 38 C.F.R. § 4.14 (2018); Esteban v. Brown, 6 Vet. App. 259, 262 (1994).

8. Entitlement to an initial compensable rating for bilateral plantar fasciitis prior to June 10, 2015, and a rating in excess of 10 percent from June 10, 2015 to March 28, 2017, and a rating in excess of 30 percent from March 29, 2017 to May 9, 2018 for bilateral plantar fasciitis and pes planus disability. 

The Veteran seeks a higher assigned evaluation for his bilateral foot disability. 

As an initial matter, the RO initially granted separate noncompensable ratings for the left and right foot disabilities under Diagnostic Code 5024, governing tenosynovitis, which directs to rating on limitation of motion of the affected parts. 38 C.F.R. § 4.71a. The RO originally considered the Veteran’s disabilities by analogy to Diagnostic Code 5284, governing other injuries of the foot. 

In April 2017 rating decision, the RO combined the left and right foot disabilities into a single bilateral foot disability and rated it under Diagnostic Code 5276 for flatfoot (pes planus). The RO found that the Veteran’s bilateral foot disability involved excessive pronation with mechanical instability of both feet, which supported the assigment of a 10 percent rating under Diagnostic Code 5276 from June 10, 2015 to March 28, 2017. As of March 29, 2017, the RO found that the Veteran’s bilateral foot disability had increased to include diffused tenderness, pain on use of the feet that was accentuated on use, and indication of swelling on use, which supported the assignment of 30 percent rating under Diagnostic Code 5276. See July 2018 rating decision. 

The assignment of a particular diagnostic code is “completely dependent on the facts of a particular case.” See Butts v. Brown, 5 Vet. App. 532, 538 (1993). One diagnostic code may be more appropriate than another based on such factors as an individual’s relevant medical history, the diagnosis and demonstrated symptomatology. Any change in a diagnostic code by a VA adjudicator must be specifically explained. See Pernorio v. Derwinski, 2 Vet. App. 625, 629 (1992). Furthermore, the selection of diagnostic codes or applicable rating criteria is not protected and may be appropriately revised if the action does not result in the reduction of compensation. See 38 C.F.R. §§ 3.951, 3.957.

In this case, the evidence of record reflects that, while the Veteran was originally service-connected for right and left foot plantar fasciitis, during the pendency of the appeal, his bilateral pes planus has been associated with his bilateral plantar fasciitis. The Board notes that the Veteran’s bilateral foot symptomatology (bilateral arch pain, pain on weightbearing) on which he is rated as been consistent during the pendency of the appeal, despite the additional diagnosis of pes planus. 

Such description of bilateral foot pain is best encompassed by Diagnostic 5276 for pes planus as the criteria includes “pain on manipulation and use.” Again, plantar fasciitis is not expressly listed in the Rating Schedule pertaining to rating the feet, and it is rated by analogy to a similar foot disorder. See 38 C.F.R. § 4.71a, Diagnostic Codes 5276 to 5284. As such, the Board finds that rating the Veteran’s bilateral foot disability as a bilateral one under Diagnostic Code 5276 exclusively, for the entire period on appeal, more accurately reflects the Veteran’s bilateral foot symptomatology. 

Further, in light of the grant herein, such a determination would not result in a reduction of compensation during the period on appeal. 38 C.F.R. §§ 3.951, 3.957. Thus, the Board will analyze the Veteran’s disability as a bilateral one under Diagnostic Code 5276 first, followed by any other potentially applicable Diagnostic Codes. 

Under Diagnostic Code 5276, a noncompensable rating is warranted when symptoms are mild and relieved by built-up shoe or arch support; and a 10 percent rating is warranted for moderate symptomatology, including weight-bearing line over or medial to the great toe, inward bowing of the tendo Achillis, pain on manipulation and use of the feet. A 30 percent rating is warranted for severe bilateral pes planus with objective evidence of marked deformity (pronation, abduction, etc.), pain on manipulation and use accentuated, indication of swelling on use, characteristic callosities. A 50 percent rating is awarded where bilateral flatfeet are manifested by pronounced flatfoot, with marked pronation, extreme tenderness of plantar surfaces of the feet, marked inward displacement and severe spasm of the tendo-achillis on manipulation that is not improved by orthopaedic shoes or appliances. 38 C.F.R. § 4.71a, Diagnostic Code 5276.

Diagnostic Code 5284 governs other foot injuries and provides for a 10 percent rating for a moderate foot disability, a 20 percent rating for moderately severe foot disability, and a maximum 30 percent rating for severe foot disability. A 40 percent rating is assigned for actual loss of use of the foot. See 38 C.F.R. § 4.71a, Diagnostic Code 5284, Note.

The words “slight,” “moderate” and “severe” as used in the various Diagnostic Codes are not defined in the VA Schedule for Rating Disabilities. Rather than applying a mechanical formula, the Board must evaluate all the evidence, to the end that its decisions are “equitable and just.” 38 C.F.R. § 4.6. The use of terminology such as “severe” by VA examiners and others, although an element of evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2, 4.6.

The Veteran filed his claim for increased rating for bilateral foot disability in February 2011. He complained of pain and discomfort in his feet and arches. 

VA treatment records show complaints of stiffness and arch pain, and there was objective evidence of swelling in the feet and findings of pes planus deformity throughout the pendency of the appeal. He reportedly used orthotic insert for relief. See July 2011, February 2012, June 2015, and March 2017 VA Podiatry Consult treatment records. 

In February 2012, the Veteran was afforded with a VA foot examination to evaluate the severity of his disability. The VA examiner recorded diagnoses of right foot plantar spur and bilateral plantar fasciitis. The Veteran reported a history of pain and soreness on bottom of feet during service and he was given inserts for his boots. On clinical examination, the VA examiner noted evidence of hallux valgus, mild or moderate symptoms (bilateral), but no history of no surgery. There was no evidence of no evidence of bilateral weak foot. X-ray films revealed evidence of right plantar spur, but a normal left foot. 

A June 10, 2015 VA Podiatry Consult treatment record contains findings of excessive pronation with mechanical instability and pitting edema (moderate to severe) in each foot, but normal muscle strength and no acute bone abnormalities. A February 2016 VA Podiatry Consult treatment record noted improvement in bilateral lower extremity swelling with use of compression socks. A March 29, 2017 VA Podiatry Consult treatment record noted that the Veteran complained of increased left foot arch pain for the past week. On examination, there was evidence of moderate pitting edema, bilaterally, but no acute bone issues and normal muscle strength. The Veteran had excessive pronation with mechanical instability, bilateral and diffused tenderness with deep palpation medial plantar arch left foot. 

The Veteran was afforded another VA foot examination in April 2017. The examination report shows diagnoses of bilateral pes planus, bilateral hallux valgus, and bilateral plantar fasciitis. The Veteran complained that his bilateral foot condition has gotten worse. He described his bilateral foot pain as severe pain, especially on movement and it caused increased pain to ankles with standing and movement. During flare-ups of foot symptomatology, the Veteran reported that he cannot walk or move fast because the pain is so severe and it has caused functional loss with weight bearing activities due to pain. On pes planus examination, the VA examiner marked that that the Veteran had pain on use of foot and pain accentuated on use of each foot, and objective evidence of swelling and decreased longitudinal arch height on weight bearing in each foot. There was no evidence of pain on manipulation, characteristic calluses, extreme tenderness of plantar surface, marked deformity, marked pronation, or alteration in weightbearing line, no bowing of achilles tendon or marked inward displacement or severe spasms of achilles tendon. The Veteran used arch support for his feet, but his pes planus remained symptomatic, bilaterally. The bilateral hallux valgus was considered asymptomatic. With respect to bilateral foot pain, VA examiner observed no pain on physical examination, but recorded the Veteran had pain with weight bearing and non-weight bearing, and his pain resulted in functional impairment with standing, walking, climbing stairs, running, and driving for long periods as well as taking his first steps out of bed or after prolonged period of sitting.

In an August 2017 addendum medical opinion, the VA examiner clarified that the Veteran’s bilateral plantar fasciitis more likely than not caused him to develop bilateral pes planus. The VA examiner further concluded that bilateral foot symptoms attributable to his bilateral plantar fasciitis, which included include pes planus, caused him pain with standing, walking, running, climbing stairs, and driving for long periods. The VA examiner opined that the Veteran’s bilateral hallux valgus was less likely related to his bilateral pes planus or bilateral plantar fasciitis based on review of the claims folder. 

The competent evidence of record demonstrates that throughout the pendency of the appeal, the Veteran has had diagnoses of bilateral pes planus as well as bilateral plantar fasciitis. The Veteran’s bilateral foot symptomatology was manifest by arch pain, excessive pronation with mechanical instability, and indication of swelling on use in each foot. He has required the use of arch supports, but his bilateral foot disability remains symptomatic. 

Diagnostic Code 5276 provides that severe symptoms, with objective evidence of marked pronation, pain on use accentuated, and indication of swelling on use, bilaterally, warrant a 30 percent disability rating. The Board finds that the Veteran’s disability picture due to bilateral pes planus and plantar fasciitis more closely approximates to the criteria for a 30 percent rating under Diagnostic Code 5276 consistent with severe level of disability for the entire period prior to March 29, 2017. See 38 C.F.R. § 4.71a. 

The Veteran has already been assigned a 30 percent rating under Diagnostic 5276 for the period since March 29, 2017. See 38 C.F.R. § 4.71a.

A rating in excess of 30 percent is not warranted at any time during the period on appeal under Diagnostic Code 5276. In order to support a higher 50 percent rating under Diagnostic Code 5276, there must be evidence of pronounced flatfoot, with marked pronation, extreme tenderness of plantar surfaces of the feet, marked inward displacement and severe spasm of the tendo-achillis on manipulation that is – none of which has been shown during the period under appeal. See 38 C.F.R. § 4.71a, Diagnostic Code 5276. 

While VA treatment and evaluation records indicate that orthopedic inserts have not significantly improved the Veteran’s symptoms, and the Veteran has reported severe bilateral foot pain, neither the VA examination reports nor treatment records contain evidence of symptoms of or approximating marked pronation, marked inward displacement, or severe spasm of the tendo Achilles on manipulation. Moreover, treatment providers have characterized the Veteran’s bilateral foot problems as no worse than severe. As such, the Board concludes that the Veteran’s service-connected bilateral plantar fasciitis and pes planus has not been manifested by “pronounced” symptomatology, such that a 50 percent rating would be warranted. Accordingly, the evidence of record does not support the assignment of a rating in excess of 30 percent any point during the pendency of the appeal. 

The Board has also considered whether a higher rating would be available under Diagnostic Code 5284. However, Diagnostic Code 5284 does not encompass the eight foot conditions that are listed under their own diagnostic codes in 38 C.F.R. § 4.71a. See Copeland v. McDonald, 27 Vet. App. 333, 338 (2015) (holding that “DC 5284 does not apply to the eight foot conditions specifically listed in § 4.71a.”). As the flatfoot disability is listed under Diagnostic Code 5276, rating this disability by analogy to Diagnostic Code 5284 would represent “an impermissible rating by analogy.” Id. In addition, the Board finds that the symptoms contemplated by Diagnostic Code 5276 would overlap with the symptoms contemplated by Diagnostic Code 5284 (pain on use in the feet). Consequently, assigning a separate rating for the Veteran’s plantar fasciitis would constitute impermissible pyramiding. 38 C.F.R. § 4.14.

The Board also notes that the record does not reflect that the Veteran had weak foot, hallux rigidus, malunion or nonunion of the tarsal or metatarsal bones, or claw foot (pes cavus), and the Veteran’s mild hallux valgus was not likely associated with his bilateral foot disability. Thus, the diagnostic codes pertaining to those disabilities are not for application. See 38 C.F.R. § 4.71a, Diagnostic Codes 5277, 5281, 5283, 5278. 

The Board has also evaluated whether a higher rating is warranted based on DeLuca and 38 C.F.R. §§ 4.40, 4.45, 4.59. The Board notes that the Veteran has competently and credible described having foot pain, and being unable to stand and walk normally during these periods. However, even considering functional loss due to pain and other factors, the evidence does not reflect that the bilateral foot disability has resulted in a pronounced foot disability to justify a rating higher than 30 percent. Thus, a higher rating is not warranted on the basis of functional loss.

In light of the evidence discussed above, the Board finds that the assignment of a 30 percent rating, and not higher, for the period prior to March 29, 2017 is warranted, but that a rating higher than 30 percent since March 29, 2017 for bilateral plantar fasciitis and pes planus disability is not warranted. 

Although the Veteran is entitled to the benefit of the doubt where evidence is in approximate balance, the benefit of the doubt doctrine is inapplicable where, as here, the preponderance of the evidence is against the claim. See 38 U.S.C. A. § 5107 (b); Gilbert v. Derwinski, 2 Vet. App. 49, 53 (1990).

9. Entitlement to an initial rating in excess of 10 percent for left ankle disability from February 9, 2011 to May 9, 2018

10. Entitlement to an initial rating in excess of 10 percent for right ankle disability from February 9, 2011 to May 9, 2018

The Veteran seeks higher initial assigned disability ratings for his service-connected left and right ankle disabilities, which each has been rated as 10 percent disabling. He asserts that his bilateral ankle disability is more severe than contemplated by the current assigned 10 percent ratings. 

The RO found that the Veteran’s right and left ankle disabilities were manifested by moderate limitation of motion and assigned each ankle a 10 percent rating under Diagnostic Code 5271.

Under Diagnostic Code 5271, a 10 percent disability rating requires moderate limited motion of the ankle. A 20 percent disability rating, which is the maximum evaluation available under Diagnostic Code 5271, requires marked limited motion of the ankle. 38 C.F.R. § 4.71a, Diagnostic Code 5271. Normal range of motion for the ankle is 20 degrees of dorsiflexion and 45 degrees of plantar flexion. 38 C.F.R. § 4.71, Plate II.

During the pendency of the appeal, the Veteran has been afforded VA ankle examinations in February 2012 and April 2017. In addition, a review of his VA treatment records shows complaints of stiffness and swelling in his ankles. 

The February 2012 VA examination report shows diagnosis of soft tissue edema and dystrophic calcification, bilateral ankles. The Veteran reported that he injured his ankles in service, was treated with ankle wraps and given pain medication. He denied flare-ups of symptoms that impacted function of the ankle. On clinical examination, the VA examiner observed that range of motion was 45 degrees or greater on plantar flexion, and 20 degrees or greater on dorsiflexion in both ankles. There was no objective evidence of painful motion or additional limitation after repetitive use in either ankle. There was pain on palpation of both ankles, but with normal muscle strength and no instability or ankylosis. X-ray film of the ankles was negative for arthritis but there was evidence of dystrophic soft tissue calcification in both ankles. The VA examiner found that clinical examination revealed evidence of bilateral ankle swelling with 2+ pitting edema. 

In a December 2012 addendum medical statement, the VA examiner clarified that while the Veteran had full range of motion in each ankle during examination, but there was evidence of localized tenderness of the joint on palpation which justified his current symptoms based on results of diagnostic study. The VA examiner further noted that the Veteran has swelling of the ankles and which has compromised vascular circulation to his lower extremities. 

In April 19, 2017, the Veteran was again afforded a VA examination. At that time, the VA examiner noted that there was diagnostic evidence of new diagnosis of minimally displaced fracture of the right distal tibia. The Veteran complained that his bilateral ankle conditions had worsened. He described flare-ups of bilateral ankle due to swelling that affects the legs and causes problems with balance and weight bearing due to too much pain. Clinical examination revealed that the Veteran had abnormal range of motion with dorsiflexion limited to 5 degrees and plantar flexion limited to 25 degrees, with pain on passive motion, weightbearing, and non-weightbearing testing, and evidence of crepitus in both ankles. 

While the repetitive testing revealed objective evidence of functional loss due to pain, fatigue, weakness, and lack of endurance, the April 2017 VA examiner found that it did not result in additional limitation in either ankle. The VA examiner further found that the Veteran’s reports of flare-ups and functional loss was medically consistent with the findings from clinical examination that showed less movement than normal, swelling, and weakened movement. The Veteran had normal muscle strength in both ankles, and there was no evidence of ankylosis or instability. An x-ray did show evidence of degenerative arthritis. The VA examiner concluded the Veteran’s bilateral ankle condition impacted his ability to function as he could not walk farther than one mile, run more than a city block, drive longer than an hour, or climb more than one flight of stairs. 

VA outpatient treatment records were also reviewed, but they did not show a disability picture different than that noted in the VA examination reports.

Based on all the above evidence, the Board finds that the Veteran’s left and right ankle disabilities more closely approximate moderate, rather than marked limitation of motion for the period prior to April 19, 2017. While the record reflects that the Veteran experiences tenderness and swelling in both ankles, range of motion testing demonstrated that the Veteran retained considerable dorsiflexion and plantar flexion of his ankle joints during the February 2012 VA examination. The Veteran specifically denied any flare-ups in symptoms during the 2012 VA examination. So, even when considering any functional loss due to swelling or weakness, does not demonstrate more than moderate symptomatology in either ankle prior to April 19, 2017. See 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202, 206-07 (1995).

In addition, the 2012 VA examiner observed no evidence of instability or ankylosis in either ankle joint. VA treatment records reflect the Veteran’s complaints of stiffness and swelling in his ankles, but do not record findings of loss of motion. Overall, the Veteran’s functional impairment of the left and right ankles was not so severe as to be “marked” during the period prior to April 19, 2017. Therefore, a higher disability evaluation is not warranted under Diagnostic Code 5271 for either ankle during the period prior to April 19, 2017. See 38 C.F.R. § 4.71a, Diagnostic Code 5271.

As of April 19, 2017, the date of the VA ankle examination, the Board finds that the record demonstrates that the Veteran’s right and left ankle disabilities have worsened. During the 2017 VA examination, the Veteran exhibited dorsiflexion limited to 5 degrees, with objective evidence of painful motion, pain with passive motion, pain with weightbearing and non-weightbearing in both ankles. In addition, the VA examiner found that the Veteran’s reports of flare-ups of bilateral ankle swelling and pain that cause him difficulty with balance and weightbearing was medically consistent with the findings from examination. Based on this evidence, the Board finds that evidence from the April 2017 VA examination supports the functional equivalent of marked limited motion. See DeLuca, 8 Vet. App. at 204-07. For these reasons, the Board finds that increased evaluations of 20 percent are warranted for right and left ankle disabilities as of the date of the April 19, 2019 VA examination. See 38 C.F.R. § 4.71a, Diagnostic Code 5271.

The assigned 20 percent rating from April 19, 2017 is the maximum schedular rating available for limited motion. See 38 C.F.R. § 4.71a, Diagnostic Code 5271. Alternative or additional ratings are available for ankylosis, malunion of the os calcis or astralagus, a history of astragalectomy, or the functional equivalent thereof. However, the evidence of record does not support a finding of such manifestations at any point during the pendency of the appeal. 

Although there was diagnostic evidence of displaced fracture of right tibia, it was considered minimal at most and not described as malunion to support assignment of higher evaluation. Moreover, the symptomatology of limited and painful motion as well as weak motion are already contemplated by the assigned 20 percent rating for marked ankle impairment under Diagnostic Code 5271 and to assign an additional rating for such minimal displaced fracture would constitute pyramiding. See 38 C.F.R. § 4.14 (2018). 

The Board finds that the symptoms reported by the Veteran and documented in the medical evidence are fully contemplated in the rating criteria of marked limited motion for each ankle as of the date of the April 19, 2017 VA examination. Specifically, the Board finds that tenderness, painful motion, limitation of motion, and weakness of motion are all the logical consequences of marked limited motion and not the functional equivalent of any other condition. Furthermore, in awarding the increased ratings of 20 percent, the Board has already contemplated the effect of the flare-ups in each ankle flare-ups. For these reasons, the Board finds that ratings in excess of 20 percent is not warranted for either the left or right ankle disability. See 38 C.F.R. § 4.71a. 

In sum, entitlement to a disability evaluation in excess of 10 percent for service connected left and right ankle disabilities prior to April 19, 2017 is not warranted; however, as of the date of the April 19, 2017 VA examination, the bilateral ankle disability has worsened and each ankle warrants a rating of 20 percent, but not higher. 

11. Entitlement to an initial rating in excess of 10 percent for tinea barbae disability from February 9, 2011 to May 9, 2018

The Veteran seeks a higher rating for his service-connected tinea barbae.

The RO found that the Veteran’s tinea barbae disability affected at least five but less than 20 percent of exposed area and assigned a 10 percent rating under Diagnostic Code 7806. 

There is no Diagnostic Code that specifically addresses tinea barbae. The RO rated the Veteran’s skin disability by analogy under Diagnostic Code 7806 for dermatitis or eczema. See 38 C.F.R. § 4.20 (2018).

Notably, during the appeal period, changes were made to 38 C.F.R. § 4.118, Diagnostic Code 7806. Effective August 13, 2018, VA amended its regulations governing skin disabilities. VA’s intent is that the claims pending prior to the effective date will be considered under both old and new rating criteria, and whatever criteria is more favorable to the veteran will be applied. 83 Fed. Reg. 32592 (July 13, 2018). 

Under both the pre-August 2018 rating criteria and the post-August 2018 rating criteria, Diagnostic Code 7806 provides a 10 percent rating is assigned where there is involvement of at least 5 percent, but less than 20 percent, of the entire body, or at least 5 percent, but less than 20 percent, of exposed areas affected, or; intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of less than six weeks during the past 12-month period. 38 C.F.R. § 4.118, Diagnostic Code 7806. A 30 percent rating requires involvement of 20 to 40 percent of the entire body or of exposed areas affected, or; systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of six weeks or more, but not constantly, during the past 12-month period. A maximum rating of 60 percent requires involvement of more than 40 percent of the entire body or more than 40 percent of exposed areas affected, or; constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs required during the past 12-month period. 38 C.F.R. § 4.118.

In Johnson v. Shulkin, the Federal Circuit distinguished between “systemic” therapy versus “topical” therapy, holding that systemic therapy means treatment affecting the whole body, whereas topical therapy means treatment pertaining to a particular surface area that affects only the area to which it is applied. 862 F.3d 1351 (Fed. Cir. 2017). In considering whether a treatment is systemic, the Board must also consider whether the treatment affects the body as a whole and whether the given treatment is like or similar to a corticosteroid or other immunosuppressive drug. see Burton v. Wilkie, No. 16-2037, 2018 U.S. App. Vet. Claims LEXIS 1314 *20 (September 2018).

The post-August 2018 rating criteria clarify that systemic therapy includes, but is not limited to corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, PUVA, and other immunosuppressive drugs. 38 C.F.R. § 4.118 (August 2018). 

A disability under Diagnostic Code 7806 may also be rated as disfigurement of the head, face, or neck (Diagnostic Code 7800), or scars (Diagnostic Code 7801-7805) depending on the predominant disability. 38 C.F.R. § 4.118. There is no evidence of disfigurement resulting from the Veteran’s tinea barbae at any time pertinent to the appeal, and he has already been assigned a separate rating for residual scarring on the neck from tinea barbae which is discussed in the remand portion below. 

The Veteran filed his claim for service connection for skin disability in February 2011. He asserted that he had a shaving condition, tinea barbae, on his neck and chin as a result of his service and he was prescribed cream. He asserts that his skin problems have worsened since service. 

The Veteran was provided a VA skin examination in February 2012. He complained of raised bumps on his neck and chin from shaving. He stated that the skin condition did not cause scarring or disfigurement of the head, face, or neck. He did not have any systemic manifestations due to any skin disease. He did not use oral or topical medication in the past 12 months or any other treatment. Further, he did not have any debilitating or non-debilitating episodes in the past 12 months. On clinical examination, the VA examiner observed that he continues to have hyperpigmented lesions on face and skin. The skin condition did not affect his ability to work. The VA examiner did not indicate the percentage of the total body or exposed area were affected by the Veteran’s tinea barbae as it was not listed as one of the conditions specified on the examination questionnaire. 

The Veteran was afforded another VA skin examination in April 2017, which confirmed a diagnosis of tinea barbae. The Veteran complained that his skin condition had worsen since service. The VA examiner marked that the Veteran’s skin condition had resulted in superficial scarring on the anterior of the neck. The Veteran had not developed systemic manifestations due to his skin condition, and he had not required any no oral or topical treatments in past 12 months or no treatment or procedures in past 12 months. The Veteran denied any no debilitating or non-debilitating episodes due to his skin condition. The VA examiner recorded that the Veteran’s tinea barbae was considered quiescent because there was no active lesions on clinical examination. The VA examiner found that his skin condition was manifested by a few scaly spots with elevated borders on a hyperpigmented background with diffused scarring. The VA examiner concluded that based on clinical evaluation, the Veteran had status-post tinea barbae, with 5 percent to less than 20 percent of exposed area and less than 5 percent of total area. 

The available VA and private treatment records do not show complaints or treatment for tinea barbae during pendency of the appeal. 

Based on the foregoing, the Board finds that a disability rating in excess of 10 percent is not warranted for the Veteran’s tinea barbae. See 38 C.F.R. § 4.118, Diagnostic Code 7806. In order to warrant a higher 30 percent disability rating under Diagnostic Code 7806, the evidence must show involvement of 20 to 40 percent of the entire body or of exposed areas affected, or; systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of six weeks or more, but not constantly, during the past 12-month period. Neither the 2012 nor 2017 VA examination demonstrate such criteria, and there is no medical evidence during the period under consideration contrary to the VA examination findings. Although the Veteran reported that he has used cream to treat his skin condition, that is a topical treatment and was not described as affecting the whole body or being like a corticosteroid or immunosuppressive drug.

As such, there is no indication that the tinea barbae supports the assignment of a rating in excess of 10 percent under Diagnostic Code 7806 at any point during the pendency of the appeal. See 38 C.F.R. § 4.118. 

A disability under Diagnostic Code 7806 may also be rated as disfigurement of the head, face, or neck (Diagnostic Code 7800). See 38 C.F.R. § 4.118. The Board finds that while the record reflects that the Veteran has some bumps and darkened areas on his face, his predominant skin disability most closely approximates a rating based on dermatitis and eczema under Diagnostic Code 7806, and is appropriately rated based on less than 20 percent of exposed areas and less than 5 percent of total body affected. As disabilities under Diagnostic Code 7806 are to be rated either as dermatitis or rated as a disfigurement of the head, face, or neck, or rated as scars, “depending on the predominant disability,” the Board finds that the Veteran may not receive other ratings for the service-connected tinea barbae in addition to the currently-assigned 10 percent rating under Diagnostic Code 7806. See 38 C.F.R. § 4.118 (Schedule of Ratings - Skin). 

Additionally, the Veteran is not shown to have benign neoplasms on the skin, or impairment of function due to the skin disability. He is also not shown to have disfigurement of head, face, or neck with visible or palpable tissue loss and either gross distortion or asymmetry of three or more features or paired sets of features (nose, chin, forehead, eyes (including eyelids), ears, cheeks (lips), or with at least one characteristic of disfigurement so as to warrant a compensable rating under Diagnostic Code 7800. 

In light of the foregoing, the Board finds that the Veteran is not entitled to a disability rating in excess of 10 percent for his tinea barbae. See 38 C.F.R. § 4.118. The evidence in this case is not so evenly balanced so as to allow application of the benefit-of- the-doubt rule. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102.

Service Connection

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active service, even if the disability was initially diagnosed after service. 38 U.S.C. §§ 1110, 1131 (2012); 38 C.F.R. § 3.303 (2018).

Generally, an award of service connection requires evidence of three elements: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship or nexus between the current disability and the disease or injury incurred or aggravated during active service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

The Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Kahana v. Shinseki, 24 Vet. App. 428, 433 (2011). This includes weighing the credibility and probative value of lay evidence against the remaining evidence of record. See King v. Shinseki, 700 F.3d 1339 (Fed. Cir. 2012); Kahana, 24 Vet. App. at 433-34. 

In making its determination, the Board must give a veteran the benefit of the doubt on any issue material to the claim when there is an approximate balance of positive and negative evidence. 38 U.S.C. § 5107 (b); see also Fagan v. Shinseki, 573 F.3d 1282, 1287 (Fed. Cir. 2009).

12. Entitlement to service connection for a left wrist condition

The Veteran seeks entitlement to service connection for a left wrist condition. He contends that he has a current left wrist disorder as result of injury he sustained during his period of service. 

The RO found that the Veteran sought treatment for left wrist pain in May 1976. At that time, he reported a history of wrist fracture three years prior, but had received normal wrist evaluation on his June 1974 enlistment examination. He was assessed with chronic pain, dorsum of the left wrist in May 1976. 

The question for the Board is whether the Veteran has a current disability that began during service or is otherwise related to his period of service.

The Board concludes that the Veteran does not have a current diagnosed left wrist disorder and has not had one at any time during the pendency of the claim or recent to the filing of the claim. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); 38 C.F.R. § 3.303(a), (d).

The February 2012 VA examiner evaluated the Veteran and determined that, while he had experienced symptoms of left wrist pain and was treated for ganglion cyst in service, those conditions had resolved. The VA examiner noted that the Veteran had a normal clinical examination of the left wrist and x-ray film of the wrist was negative for abnormalities. Based on the findings from clinical examination and review of the record, the VA examiner concluded that the Veteran did not have a currently diagnosed left wrist disorder. Further, VA and private treatment records do not contain a diagnosis of a left wrist disorder.

While the Veteran believes he has a current diagnosed left wrist disorder as result of his period of service, he is not competent to provide a diagnosis in this case. The issue is medically complex, as it requires specialized medical education/knowledge of the musculoskeletal systems and the ability to interpret complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). Consequently, the Board gives more probative weight to the competent medical evidence.

13. Entitlement to service connection for right eye orbital contusion with diplopia and mild traumatic iritis condition

The Veteran seeks entitlement to service connection for right eye orbital contusion, mild traumatic iritis condition, and double vision as result of his period service. He contends that he suffered injury to his eyes during service which has resulted in his current eye problems. 

The RO found that the service treatment records showed that Veteran injured his right eye while playing football in October 1979 and he was assessed with orbital contusion with diplopia and mild traumatic iritis. 

The question for the Board is whether the Veteran has a current eye disability that began during service or is otherwise related to his period of service.

The Board concludes that the Veteran does not have a current diagnosis of right orbital contusion, diplopia, or mild traumatic iritis and has not had been diagnosed with any of those conditions during the pendency of the claim or recent to the filing of the claim. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); 38 C.F.R. § 3.303(a), (d).

The February 2013 VA examiner evaluated the Veteran and determined that, while he suffered right orbital contusion with diplopia and mild traumatic iritis during service, those conditions had resolved. The VA examiner noted that the findings from clinical examination did not show evidence of traumatic eye disorder and both corneas and iris were normal. Moreover, the service treatment records show that the Veteran’s right eye orbital contusion, mild traumatic iritis condition, and diplopia were considered resolved prior to his separation from service. See November 1979 service treatment record. Based on the findings from clinical examination and review of the record, the VA examiner concluded that the Veteran did not have a current diagnosis of right orbital contusion, diplopia, or mild traumatic iritis. Further, VA and private treatment records do not contain a diagnosis of right orbital contusion, diplopia, or mild traumatic iritis. 

While the Veteran believes he has a current diagnosed eye disorder as result of his in-service treatment for right orbital contusion, diplopia, or mild traumatic iritis, he is not competent to provide a diagnosis in this case. The issue is medically complex, as it requires specialized medical education/knowledge of the musculoskeletal systems and the ability to interpret complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). Consequently, the Board gives more probative weight to the competent medical evidence.

14. Entitlement to service connection for open angle glaucoma 

The Veteran seeks entitlement to service connection for open angle glaucoma as result of his period service. He contends that he suffered injury to his eyes during service which has resulted in his current eye problems. 

The RO found that the Veteran suffered eye injuries during his period of service and the medial evidence demonstrated that the he has a current diagnosis of open angle glaucoma. 

The question for the Board is whether the Veteran’s current diagnosed open angle glaucoma began during service or is at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that, while the Veteran has a current diagnosis of open angle glaucoma, and evidence shows that in-service eye injuries occurred, the preponderance of the evidence weighs against finding that the Veteran’s diagnosed open angle glaucoma began during service or is otherwise related to an in-service injury, event, or disease. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a), (d).

Service treatment records do not show diagnosis of glaucoma and his eyes were evaluated as normal on his July 1977 examination prior to separation. The medical evidence of glaucoma comes from a 1996 private treatment records that contains findings of bilateral optic cupping, however, the Veteran was not diagnosed with glaucoma until July 2006, which comes decades after his separation from service. 

Further, the February 20123 VA examiner opined that the Veteran’s open angle glaucoma is not at least as likely as not related to an in-service injury, event, or disease, including eye injuries. The rationale was that the Veteran’s diagnosis of open angle glaucoma was based on the optic nerve head appearance, and there was no evidence of abnormalities to indicate secondary or traumatic glaucoma due to in-service eye injuries. The examiner’s opinion is probative, because it is based on an accurate medical history and provides an explanation that contains clear conclusions and supporting data. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008).

The record contains no medical opinion to the contrary. 

While the Veteran believes his open-angle glaucoma is related to an in-service injury, event, or disease, including eye injuries, he is not competent to provide a nexus opinion in this case. While the Veteran is competent to report having experienced symptoms of blurred vision, he is not competent to provide a diagnosis in this case or determine that these symptoms were manifestations of open angle glaucoma. The issue is medically complex, as it requires knowledge of ocular systems in the body and interpretation of complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). Consequently, the Board gives more probative weight to the February 2013 VA examiner’s medical opinion. 

The Board has considered the applicability of the benefit-of-the-doubt doctrine; however, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

REASONS FOR REMAND

1. Entitlement to an initial compensable rating for disability due to residual scarring on neck is remanded.

A remand is needed to afford the Veteran with a new VA scar examination to determine the severity of his disability due to residual scarring on the neck due to a pre-decisional duty to assist error. The Board finds that the July 2017 VA scar examination contains insufficient findings to rate the Veteran’s disability. The examination report form indicates that if scars are too numerous to count (for example, multiple scattered shrapnel wound scars, acne scarring or pseudofolliculitis barbae), indicate “TNTC” and provide the approximate combined total area. The examiner noted that the scars were too numerous to count but did not provide the approximate combined total area. Moreover, the Board finds that clarification is needed regarding the manifestations specific to the Veteran’s residual scarring on the neck without overlapping his service-connected tinea barbae disability. Due to the duty to assist error prior to the rating decision on appeal, remand for an additional examination is warranted. 

2. Entitlement to service connection for residual eye injury and secondary vision loss is remanded.

A remand is needed to obtain an addendum VA medical opinion on whether the Veteran’s current diagnosed eye disorder, bilateral cataracts noted during the February 2013 VA eye examination is a residual of in-service eye injury and has resulted in vision loss. While the VA examiner concluded that the Veteran did not have current diagnosis of residual eye injury and secondary vision loss based on clinical examination, the VA examiner did not provide an opinion on whether the Veteran’s bilateral cataracts and decreased near vision shown during examination were residuals of in-service eye injuries. Accordingly, because of the duty to assist error prior to the rating decision on appeal, remand is needed to obtain an addendum VA medical opinion. 

3. Entitlement to service connection for headaches, to include as secondary to residuals of eye injury and vision loss is remanded.

A remand is needed to afford the Veteran with a VA examination to determine the nature and etiology of the Veteran’s claimed headaches. The Veteran asserts that his headaches had an onset following right eye injury during his period of service, and he has continued since service. A review of service treatment records shows complaints of headaches in service. Accordingly, the Board finds that a due to the duty to assist error prior to the rating decision on appeal, remand is needed to afford the Veteran with a VA examination in conjunction with his claim. 38 C.F.R. § 3.159 (c)(4).

The matter is REMANDED for the following action:

1. Schedule the Veteran for an examination to determine the current severity of his service-connected residual scarring on the neck. The examiner should provide a full description of the disability and report all signs and symptoms necessary for evaluating the Veteran’s disability under the rating criteria. To the extent possible, the examiner should distinguish symptoms and functional impairments due to residual scarring on the neck alone as opposed to symptoms caused by service-connected tinea barbae. 

2. Schedule the Veteran for an examination determine the nature and etiology of any headache disorder. The examiner must opine whether it is at least as likely as not related to an in-service injury, event, or disease, including eye injuries and complaints of headaches. 

3. Obtain an addendum opinion regarding whether the Veteran’s bilateral cataracts is at least as likely as not related to in-service eye injuries or otherwise related to his period of service.

4. Obtain an addendum opinion clinician regarding whether the Veteran’s decreased near vision is at least as likely as not result of a superimposed injury his period of service.

 

 

K. J. ALIBRANDO

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD J. Murray, Counsel